UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-22954-CIV-LENARD/O'SULLIVAN

**EMMANOUIL HIOTAKIS,**

    Plaintiff,

vs.

**CELEBRITY CRUISES INC.,**

    Defendant.

_____/

## ORDER GRANTING DEFENDANT CELEBRITY CRUISES INC.'S MOTION TO DISMISS (D.E. 13) AND COMPELLING THIS CASE TO ARBITRATION

**THIS CAUSE** is before the Court on Defendant Celebrity Cruises Inc.'s ("Defendant") Motion to Dismiss ("Motion," D.E. 13), filed on September 14, 2010. Plaintiff Emmanouil Hiotakis ("Plaintiff")[1] filed his Response in Opposition to the Motion ("Response," D.E. 22) on October 22, 2010, to which Defendant replied ("Reply," D.E. 27) on November 8, 2010. Having reviewed the Motion, the Response, the Reply and the record, the Court finds as follows:

**I.  Factual and Procedural Background**

This action involves allegedly unpaid overtime wages owed to the Defendant's housekeeping staff from 1992 to the present. (Complaint ¶ 19, D.E. 1-1.) Plaintiff Emmanouil Hiotakis, the named plaintiff in this putative class of employees, worked in

---

[1]  The correct spelling of Plaintiff's last name is "Chiotakis." The case style is apparently a scrivener's error made by Plaintiff's counsel.

Defendant's housekeeping department in its Caribbean fleet from approximately 2002 through April 24, 2008.  (*Id*. ¶¶ 9-11.)[2]  He alleges that he is owed unpaid overtime wages, penalties and statutory damages under 46 U.S.C. § 10313, the Seaman's Wage Act ("Wage Act").  (*Id*. at Count I.)

Plaintiff originally brought suit against Defendant in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.  Defendant removed the action to this Court and subsequently moved to dismiss.  (*See generally,* Notice of Removal, D.E. 1.)

In its Motion, Defendant argues that Plaintiff's Wage Act claim must be dismissed as it is governed by a mandatory arbitration provision.  Per the Motion, Plaintiff, a Greek citizen, signed employment agreements with Defendant which incorporated by reference the collective bargaining agreements which governed all terms of his employment, including Defendant's obligation to pay him overtime wages.  The collective bargaining agreements contain mandatory arbitration provisions, providing for arbitration in either Miami or Greece, Plaintiff's country of citizenship. (Mot. at 3 and 7, *see also* Mot. Exs. 3-8.)  Defendants argue that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, 9 U.S.C. §§ 202-208 ("Convention Act") requires that the arbitration provision be enforced once four jurisdictional elements are met.  (Mot. at 4, citing *Bautista v. Star Cruises*, 396 F.3d 1289, 1294, n.7 (11th Cir. 2005).)

---

[2] Defendant posits that Plaintiff's employment ended in 2006.  (*See* Mot. at 2.)  For the purposes of the Motion, Plaintiff's date of termination is not relevant.

2

Defendant contends that all of the elements have been met in this case and therefore dismissal of the action in favor of arbitration is required.  (*Id*. at 8.)

Plaintiff opposes Defendant's Motion on several grounds.  First, he argues that the collective bargaining agreements attached to Defendant's Motion do not pertain to him, as he is not a member of any Italian union, and the Greek collective labor agreement only applies to the crews of Mediterranean vessels. (Resp. at 2-3.)  He indicates that the Greek Marine Work Contract from 2004 is the only operative agreement referenced by Defendant.  (*Id*. at 3.)

Plaintiff also argues that the Greek Marine Work Contract's arbitration provision is void as against public policy.  (*Id*. at 4-5.)  The provision states that Plaintiff's "employment contract shall be governed exclusively and solely by the Greek Laws, . . . expressly barring the application of any foreign law or provision."  (*Id*. at 4-5, citing D.E. 13-2 at 8, ¶ 9.)  Because such language acts as waiver of Plaintiff's right to pursue statutory remedies, including those under the Wage Act, and precludes opportunity for review, Plaintiff contends that it is not enforceable as a matter of law. (*Id*. at 5, citing *Thomas v. Carnival Crop*., 573 F.3d 1113 (11th Cir. 2009).)

Finally, Plaintiff claims that Defendant waived its right to enforce the arbitration provision.  (*Id*. at 5-6.)  Plaintiff, along with forty additional claimants, commenced the arbitration process with the International Centre for Dispute Resolution ("ICDR") in March 2010.  (*Id*. at 7.)  However, Defendant allegedly refused to pay for the costs of arbitration for the forty one claimants, as required by the 2008 Collective Bargaining

3

Agreement, and after some delay, all of the claims were withdrawn from the ICDR on or around July 21, 2010. (*Id*. at 9.) Plaintiff subsequently commenced this suit in state court. (*Id*.) In October 2010, Plaintiff received notice from the ICDR that the arbitration process had been reinstated for the claimants, at the direction of Defendant's counsel. (*Id*. at 9.) Plaintiff argues that this chain of events illustrates Defendant's waiver of the arbitration provision, the resulting prejudice to Plaintiff and bad faith on the part of Defendant.

In its Reply, Defendant addresses each of Plaintiff's contentions. First, Defendant argues that its employees were required to sign sign-on employee agreements ("SOEA") prior to beginning a tour of employment with Defendant. (Reply at 1-2.) Each SOEA, including those that Plaintiff admittedly signed, incorporated the Italian collective bargaining agreements which contained the mandatory arbitration provisions. Although Defendant cannot locate Plaintiff's signed SOEAs, they claim that Plaintiff undoubtedly signed his, and that they incorporate the collective bargaining agreements which govern the present dispute. Furthermore, Defendant points out that from 2002 through 2004, Defendant's Greek employees signed Marine Work Contracts that incorporated the terms of the Greek collective bargaining agreements. (*Id*. at 6.)[3]

As to Plaintiff's second argument, Defendant contends that he has not met his

---

[3] Defendant's Reply also raises the argument that Plaintiff's claims for overtime wages from 2002 through 2004 would be time barred if he is correct in his assertion that only his Marine Work Contract for 2004 is the only operative agreement. This argument was not raised in the initial Motion and shall not be considered at this stage.

burden under *Thomas* to show that the arbitration provision is void as against public policy. Specifically, Plaintiff has failed to show that (1) Greek law will not recognize his U.S. statutory Wage Act claim, (2) that the choice of forum clause combined with the choice of law clause operates as a prospective waiver of his Wage Act claim, (3) that Greek law will not be as favorable to Plaintiff as United States law, and (4) that there will be no opportunity for review of the disposition of his Wage Act claim. (*Id*. at 8, citing *Thomas*, 573 F.3d at 1122-23).

Finally, Defendant dismisses Plaintiff's claims of waiver, arguing that Plaintiff has misconstrued the waiver analysis. (*Id*. at 8.) Defendant notes that when waiver is asserted in the context of the Convention Act, "the analysis focuses upon whether a party pursued litigation instead of arbitration." (*Id*. (citations omitted).) Here, Defendant never pursued litigation, therefore waiver cannot be established.

## II.     Standard of Review

Federal law strongly favors agreements to arbitrate, especially in international commercial transactions. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15; *Del Orbe v. Royal Carribean Cruises, LTD.*, 549 F. Supp. 2d 1365, 1368 (S.D. Fla. 2008) (Gold, J.). In deciding a motion to compel under the Convention Act, the district court conducts a "very limited inquiry." *Bautista*, 396 F.3d at 1294. Four jurisdictional prerequisites must be met prior to compelling arbitration:

> (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the

> Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Id.* at 1294, n.7. If the four prerequisites are satisfied, the court must compel arbitration unless one the Convention Act's affirmative defenses applies. *Vacaru v. Royal Carribean Cruises, LTD.*, 2008 WL 649178, at *4 (S.D. Fla. Feb. 1, 2008) (Ungaro, J.). One such affirmative defense that may preclude arbitration is when "[t]he recognition or enforcement of the award would be contrary to the public policy of that country." *Thomas*, 573 F.3d at 1120 (quoting Article V(2)(b) of the Convention); *see also Bautista*, 396 F.3d at 1302.

### III. Discussion

#### A. Jurisdictional Prerequisites

The Court begins its analysis with the four jurisdictional prerequisites necessary to compel arbitration. Although Plaintiff does not write in such express language, the Court interprets his initial protestations regarding the applicability of the collective bargaining agreements to mean that he disputes the first prerequisite: the existence of an agreement in writing within the meaning of the Convention.[4]

---

[4] Regarding the second, third and fourth jurisdictional prerequisites, the parties do not dispute that the potentially applicable collective bargaining agreement provides for arbitration in the territory of a signatory of the Convention (here, the United States or Greece), that the agreement arises out of a legal, commercial relationship, that Plaintiff is not an American citizen, or that the parties' commercial relationship has some reasonable relation with one or more foreign states.

### *1.     The Agreements Constitute a Valid Agreement in Writing*

The Convention Act's definition of an "agreement in writing" includes "an arbitral clause in a contract or an arbitral agreement, signed by the parties or contained in an exchange of letters or telegrams." *Polychronakis v. Celebrity Cruises, Inc.*, 2008 WL 5191104, at *4 (S.D. Fla. Dec. 10, 2008) (King, J.); *see Bautista*, 396 F.3d at 1300. It is well-settled that the agreement to arbitrate can exist where the arbitration clause in a collective bargaining agreement has been incorporated by reference into the main contract between the employer and employee. *See Bautista*, 396 F.3d at 1300; *Polychronakis*, 2008 WL 5191104, at *4.

In *Polychronakis*, a case involving a different Greek seaman working for Defendant, Judge King found that the first jurisdictional requirement of an agreement in writing had been satisfied. 2008 WL 5191104, at **4-5. There, the plaintiff executed SOEAs prior to his terms of employment with Defendant from 2004 through 2007; each SOEA incorporated by reference the terms of an Italian union's collective bargaining agreement. *Id.* at *3. That the plaintiff was never a member of an Italian union was "irrelevant to the question of whether [plaintiff was] subject to the incorporated collective bargaining agreement." *Id.* (also finding that the third jurisdictional prerequisite was satisfied). Furthermore, Judge King concluded that *Bautista* rejected the plaintiff's other arguments, specifically that the language of the SOEAs was too vague, failing to name a specific union or a specific collective bargaining agreement, and that the collective bargaining agreement was never presented to him. *Id.* at *4. In *Bautista*, the Eleventh

Circuit stated:

> Plaintiffs . . . offer no authority indicating that the Convention or the Convention Act impose upon the party seeking arbitration the burden of demonstrating notice or knowledgeable consent. . . . We find it especially appropriate to abide by the general principal that one who has executed a written contract and is ignorant of its contents cannot set up that ignorance to avoid the obligation absent fraud and misrepresentation.

396 F.3d at 1301 (quoting *Vulcan Painters v. MCI Constructors*, 41 F.3d 1457, 1461 (11th Cir. 1995)).  Neither the plaintiff in *Polychronakis* nor the plaintiffs in *Bautista* disputed signing the contracts which incorporated the terms of the collective bargaining agreements.

Here, Plaintiff raises similar arguments: he has never been a member of an Italian Union, he did not receive the referenced collective bargaining agreement and was not aware of its terms, and the language of the unsigned SOEA provided by Defendant is vague as to the terms "Collective Bargaining Agreement" and "Union."  Plaintiff also notes that Defendant fails to attach signed, executed SOEAs from 2004 through the end of Plaintiff's employment to its Motion, the SOEA is for employment with another cruise line operator, and the Greek collective labor agreements ("Greek CLA"), governing employment from 2002 through 2004, only applied to "Crews of Mediterranean Passenger Ships."

Beginning with Plaintiff's original arguments first, the Court finds them unpersuasive.  The 2002, 2003 and 2004 Greek CLAs clearly state, "[t]his Collective Agreement applies to the following: . . . . Passenger Tourist Ships performing cruises

inside and outside the Mediterranean Sea." (Mot. Ex. 5, 2004 Greek CLA at Art. 1.1(a), D.E. 13-5; *see also* Mot. Ex. 3, 2002 Greek CLA, Art. 1.1(a), D.E. 13-3; Mot. Ex. 4, 2003 Greek CLA at Art. 1.1(a), D.E. 13-4.) Thus, incorporated by the 2004 Marine Work Contract, which Plaintiff concedes is binding upon him (Resp. at 3), the terms of the 2004 Greek CLA clearly govern Plaintiff's entitlement to wages. The same would be true for the 2002 and 2003 Greek CLAs.[5]

Plaintiff's contention that the SOEA is for Defendant's affiliated company, RCCL, is also without merit. The SOEA clearly lists "Celebrity Cruise Line" in its header. (*See* Ex. B to Rombach Decl., 13-2 at 9.) The use of the defined term "Company" throughout the SOEA as distinct from the specifically referenced "Royal Caribbean Cruises Ltd." in the "Remark" section further indicates to the Court that the SOEA pertains to an entity *other* than RCCL.

Regarding the lack of signed SOEAs and Marine Work Contracts for all years of Plaintiff's employment except 2004, Defendant presents the affidavit of Jay Rombach, its associate vice president of human resources, which explains that from 2002 through 2004, all Greek nationals who worked for Defendant signed a Marine Work Contract as a precondition of their employment. (Rombach Decl. ¶ 3, D.E. 13-2.) These Marine Work Contracts incorporated by reference the Greek CLAs. (*Id.*; *see also* Mot. Ex. 3, 2002

---

[5] The Court also notes that the sample, unsigned Marine Work Contract covers "announced cruises in the CARIBBEAN/SOUTH/CENTRAL AMERICA seas for 2004" and the Company (Defendant) may transfer Plaintiff "to another passenger ship, managed and operated by the Company, during the [period of employment], to work under the same terms and conditions." (Ex. A to Rombach Decl., 13-2 at 7.)

Greek CLA; Mot. Ex. 4, 2003 Greek CLA; Mot. Ex. 5, 2004 Greek CLA.)  From 2004 through 2006, Greek crewmembers were required to sign SOEAs as a precondition of employment.  (Rombach Decl. ¶ 4.)  The SOEAs incorporate by reference a collective bargaining agreement between Defendant and the Italian union, Federazione Italianan Trasporti.  (*Id.*; *see also* Mot. Ex. 6, 2005 Collective Agreement, D.E. 13-7; Mot. Ex. 7, 2006 Collective Agreement, D.E. 13-8.)  Rombach stresses that no person would be "permitted to sign on [Defendant's] cruise ship at the beginning of his or her scheduled contract period unless he or she first signed the [Marine Work Contract/SOEA]." (Rombach Decl. ¶¶ 3, 4.)

Plaintiff does not deny that he worked aboard Defendant's ships under a contract, such as the Marine Work Contract or SOEA, which governed the terms of his employment.  He refers to the existence of Defendant's contractual obligation to pay him overtime wages as arising "according to contract or collective bargaining agreement." (Compl. ¶¶ 13, 14, 15.)    Plaintiff's Complaint, Response and Affidavit in support imply that Plaintiff did sign an employment contract with Defendant, and some collective bargaining agreement governs his Wage Act claim.   However, both Plaintiff and Defendant fail to attach signed, executed contracts of employment, leaving the Court in the unenviable position of determining what contracts Plaintiff actually signed.  The Court shall do so, mindful of the "healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Dockeray v. Carnival Corp.*, 724 F. Supp. 2d 1216, 1226 (S.D. Fla. 2010)

10

(Altonaga, J.)

Faced with absence of signed Marine Work Contracts and SOEAs, the Court relies on the affidavit of Jay Rombach in order to find that, pursuant to Defendant's custom and regulations, Plaintiff would have been required to sign the Marine Work Contracts and SOEAs each time he began a term of employment on one of Defendant's cruise ships. *See* FED. R. EVID. 406 ("Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitness, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."); *see also Zola v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 1984 WL 94, at *1 (S.D.N.Y. May 28, 1985) (finding an agreement in writing despite the absence of a signed document, where defendant submitted an affidavit stating that under its practices and procedures, plaintiff would have had to sign an agreement before he could open and maintain an account with defendant); *Johnson v. Charles Schwab & Co., Inc.*, 2010 U.S. Dist. LEXIS 16771, at *5 (S.D. Fla. Jan. 26, 2010) (Vitunac, M.J.) (the plaintiff could not dispute that he had executed an agreement containing arbitration provision because the NASD and NYSE required such an agreement to be executed prior to registration with them).  Thus the Court is satisfied that pursuant to Defendant's practice and procedures, Plaintiff signed the applicable Marine Work Contracts and SOEAs prior to each of his terms of employment.

The Court next reviews the Marine Work Contract and the SOEA, finding that both incorporate by reference the Greek CLA and collective bargaining agreement with

11

the Italian union, respectively.  (*See* Exs. A and B to Rombach Decl.)  That the terms "Greek Collective Agreement" and "Collective Bargaining Agreement" are not defined within Marine Work Contract and SOEA does not affect their incorporation and application here.

First, Plaintiff has presented no evidence that the Marine Work Contract and SOEA could have referred to more than one collective bargaining agreement, or any *other* collective bargaining agreement.  Plaintiff instead hangs his hat on the notion that Defendant has failed to locate and attach signed, executed copies of his employment contracts.  However, Plaintiff fails to cite any authority in support of his argument that Defendant's failure to attach signed copies of the employment contracts should preclude enforcement of the arbitration provision.

Second, the SOEA expressly states that the signing employee acknowledges receipt of a copy of the applicable collective bargaining agreement.  Plaintiff avers that he did not receive a copy of the collective bargaining agreement. (Chiotakis Aff. ¶ 9, D.E. 22-1) However, several recent cases in this District have found that the first jurisdictional prerequisite is met where the crewmember signs an employment agreement that incorporates by reference a collective bargaining agreement containing an arbitration clause and that by signing the employment agreement, the crewmember acknowledges receipt of the collective bargaining agreement.  *Hodgson v. Royal Caribbean Cruises, Ltd.*, 706 F. Supp. 2d 1248, 1254 (S.D. Fla. 2009) (Altonaga, J.); *Polychronakis*, 2008 WL 5191104, at *4-5; *Allen v. Royal Caribbean Cruises, Ltd.*, 2008 WL 5095412, at *4-5

(S.D. Fla. Sept. 30, 2008) (Ungaro, J.); *Vacaru*, 2008 WL 649178, at *4 (S.D. Fla. Feb. 1, 2008). Having found that Defendant's practice and procedures required Plaintiff to sign the SOEAs, the Court further finds that Plaintiff's acknowledgment of receipt on the SOEA of the collective bargaining agreement outweighs his self-serving averment that he never received it.

Finally, the Court declines to give any weight to Plaintiff's averment that it was Defendant's practice "not to provide or show any collective bargaining agreement to any crewmembers,"as Plaintiff provides no foundation for knowledge of Defendant's professional customs and practices.

To the extent the Plaintiff raises similar arguments to those made in *Polychronakis*, the Court adopts Judge King's well-reasoned analysis and application of *Bautista* in finding that (1) Plaintiff's non-membership in the Italian union did not preclude the SOEA from incorporating by reference that union's collective bargaining agreement, (2) the incorporation by reference of the collective bargaining agreements by the Marine Work Contract and SOEA satisfies the Convention Act's agreement in writing requirement, and (3) pursuant to *Bautista*, the party seeking arbitration does not need to demonstrate notice or knowledgeable consent of the arbitration provision. 2008 WL 5191104, at *4; *see also Bautista*, 396 F.3d at 1301.[6]

---

[6] Should the Court take into consideration Plaintiff's initial attempt at arbitration with the ICDR in March 2010, Plaintiff's argument that he was not bound by, much less aware of, the arbitration provision would be further weakened.

The Court thus finds that under *Bautista*, its progeny (including *Polychronakis*) and pursuant to FED. R. EVID. 406, Defendant has made an initial showing, via the Declaration of Jay Rombach and attached exhibits, of the existence of a written agreement to arbitrate that is sufficient to invoke the provision of section 2 of the Convention Act. *See Zola*, 1985 WL 94, at *2 (finding same under section 4 of the Federal Arbitration Act).

Accordingly, the Court finds that the jurisdictional prerequisites of the Convention Act have been met.

### B. None of the Convention's Affirmative Defenses Are Applicable

Having found that the jurisdictional prerequisites have been met, the Court must compel arbitration unless one of the Convention's affirmative defenses applies.

*1. The Arbitration Provision is Not Void as Against Public Policy*

One such defense is found in Article V of the Convention, providing that the "[r]ecognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that . . . the recognition or enforcement of the award would be contrary to the public policy of that country."

Plaintiff argues that because the Marine Work Contract requires the application of Greek law to settle all disputes, the public policy defense applies and voids the arbitration provision pursuant to *Thomas*. The seaman plaintiff in *Thomas* brought an action against his employer alleging Jones Act negligence, unseaworthiness, failure to provide

14

maintenance and cure, and failure to provide wages under the Wage Act.  573 F.3d at 1114.  The Eleventh Circuit found only a portion of the Wage Act claim was subject to a written arbitration provision.  *Id.* at 1119.  Finding Panamanian law did not provide a reasonable equivalent to plaintiff's rights under the Wage Act and there was no assurance of an opportunity for review of plaintiff's only claim, the *Thomas* Court held that the arbitration and choice of law provisions acted in tandem to strip the plaintiff of his statutorily-created rights.  *Id.* at 1123.  Thus, the *Thomas* court found the arbitration provision null and void as contrary to public policy with regard to the plaintiff's Wage Act claim and reversed the district court's decision to compel arbitration.  *Id.* at 1124.

Here, the Court finds the Convention's "public policy" affirmative defense does not apply so as to void the arbitration provisions contained in the Greek CLAs and Italian union collective bargaining agreements.  As an initial matter, Plaintiff has not explained how Greek law fails to provide him with a reasonable equivalent to his statutory Wage Act claim or submitted *any* evidence in support.  *See, e.g., Williams v. NCL (Bahamas) Ltd.*, 2011 U.S. Dist. LEXIS 37952, at *10 (S.D. Fla. Mar. 31, 2011) (in support of his argument that Bahamian law would strip him of his Jones Act and common law claims, plaintiff submitted the affidavits of two Bahamian attorneys).  Instead, Plaintiff merely cites to *Thomas* and *Vimar Seguros y Reaseguros v. M/V Sky Reefer*, 515 U.S. 528 (1995), a Supreme Court case affirming the order to compel arbitration in Japan under the Carriage of Goods by Sea act.

The Court agrees with Defendant; simply uttering the name *Thomas* and itemizing

the Eleventh Circuit's findings in that case will not satisfy the inquiry of whether the arbitration provision in the instant case is void as against public policy. Plaintiff must provide more than conclusory assertions that the forum selection clause[7] and choice of law provision combine to operate as a prospective waiver of Plaintiff's right to pursue his Wage Act claim (or similar relief) and that no meaningful review of the arbitral award will be available. *See Thomas*, 573 F.3d at 1124. Plaintiff's failure to make any showing regarding Greek law, including the recognition or foreign statutory causes of action such as the Wage Act and the remedies available to seamen seeking overtime wages, and the opportunity for review of arbitral awards, preclude this Court from making the finding that the public policy affirmative defense voids the arbitration provisions.[8]

Accordingly, none of the Convention's affirmative defenses apply to the arbitration provisions at issue.

    *2.*    *No Waiver of the Arbitration Provision*

An agreement to arbitrate may be waived just like any other. *Burton-Dixie Corp. v. Timothy McCarthy Constr. Co.*, 436 F.2d 405, 407 (5th Cir. 1971). Waiver is recognized as a defense to the enforcement of the Convention. *See, e.g., Bautista*, 396 F.3d at 1302.

---

[7] As highlighted by Defendant in its Motion, arbitration proceedings may be conducted in Miami or Greece.

[8] The Court has been unable to find relevant case law involving enforcement of arbitration provisions, requiring application of Greek law, as to U.S. Wage Act claims.

In determining whether a party has waived its right to arbitrate, the Eleventh Circuit applies a two-part test, first deciding if "under the totality of the circumstances, the party has acted inconsistently with the arbitration right," and, second, whether that party "has in some way prejudiced the other party." *Ivax Corp. v. B. Braun of Am.*, 286 F.3d 1309, 1315-16 (internal quotation omitted). "However, '[b]ecause federal law favors arbitration, any party arguing waiver of arbitration bears a heavy burden of proof.'" *Stone v. E.F. Hutton & Co.*, 898 F.2d 1542, 1543 (11th Cir. 1990) (quoting *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1025 (11th Cir. 1982), *overruled on other grounds by Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985)).

Substantial participation in litigation is enough to satisfy the first prong of waiver. *Citibank, N.A. v. Stok & Assocs., P.A.*, 387 Fed. Appx. 921, 924 (11th Cir. 2010); *Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n*, 62 F.3d 1356, 1366 (11th Cir. 1995). Here, Defendant's participation in this suit from July 27, 2010, when Plaintiff filed his Complaint in state court, through September 14, 2010, the date of the instant Motion to Dismiss, cannot be deemed substantial participation in litigation. Defendant removed the case to this Court at earliest opportunity and moved to dismiss shortly thereafter. At the time of this Motion's filing, no other litigation activity had occurred, nor had discovery commenced. *Cf. Gemb Lending, Inc. v. RV Sales of Broward, Inc.*, 2010 U.S. Dist. LEXIS 47649, at **8-9 (S.D. Fla. May 14, 2010) (Cohn, J.) (substantial participation in litigation found where defendant waited three months,

17

during which time discovery had commenced and the parties actively litigated the case, before asserting its right to arbitration).

Under the totality of the circumstances prong, the Court also takes into consideration Defendant's behavior prior to the filing of Plaintiff's Complaint. Plaintiff alleges that Defendant's dilatory tactics from May through July 2010, namely, failing to pay the filing fee to ICDR for all of the Greek seamen's claims submitted to arbitration, is evidence of behavior inconsistent with the intent to arbitrate. (*See generally*, Resp. at 5-15.) Plaintiff minimizes the fact that Defendant was required, by the 2008 collective bargaining agreement, to pay the filing fee for each of the forty one claimants' arbitration proceedings, an expensive undertaking at $4,350.00 per claim. (*Id*. at 7-8.) The record reveals that from May through July, Defendant negotiated with the American Arbitration Association ("AAA"), the parent entity of the ICDR, to pay a discounted rate for all arbitrations. On or around July 9, 2010, the parties reached an agreement: Defendant would pay to the AAA $58,000.00 in filing fees for the remaining twenty nine arbitrations (including Plaintiff's). (Reply at 12.) Shortly after, Defendant claims it began the process of paying the filing fees. However, on July 20, Plaintiff sent an e-mail to the AAA notifying it of the withdrawal of all claims due to Defendant's non-payment and declaring that Defendant had waived its right to arbitrate these remaining claims.

"Mere delay is insufficient to support a defense of waiver." *Hale v. Dep't of Revenue*, 973 So. 2d 518, 522-23 (Fla. 1st DCA 2008) (citation omitted). Here, Defendant's delay in paying the filing fees appears to have been caused by its

18

negotiations with AAA over a discounted fee. Plaintiff's attempted showing of Defendant's delay and bad faith falls far below the its heavy burden to establish the defense of waiver. *See Air Products and Chemicals, Inc. v. Louisiana Land and Exploration Co.*, 867 F.2d 1376, 1379 (11th Cir. 1989) (applying Florida law and affirming the district court's finding that mere delay did not constitute waiver). Moreover, Defendant's failure to meet Plaintiff's deadline for payment of filing fees and Plaintiff's subsequent withdrawal from arbitration and unilateral declaration of waiver is not persuasive to the Court's waiver analysis.[9]

Having found that Plaintiff has not satisfied the first prong of the test for the waiver defense, the Court need not continue to the prejudice prong.

## IV. Conclusion

Consistent with the foregoing, it is **ORDERED AND ADJUDGED** that:

1. Defendant's Motion to Dismiss (D.E. 13), filed on September 14, 2010, is **GRANTED**. Plaintiff is directed to proceed to arbitrate his overtime wage dispute as per his employment contract.

2. All pending motions are **DENIED** as moot.

3. This Case is now **CLOSED**.

---

[9] The experiences of Plaintiff's counsel with Defendant in prior ICDR arbitrations is not relevant to either prong of the waiver analysis. Having read Ms. Watford's Affidavit (D.E. 22-3), the Court is concerned about ICDR's inability to move the parties' arbitration along as well as the *ex parte* communications between the ICDR case manager and the Defendant's counsel. However, these complaints are outside the Court's province and are irrelevant to the instant Motion.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 31st day of May, 2011.

                                                            **JOAN A. LENARD**
                                            **UNITED STATES DISTRICT JUDGE**